UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HEIDI M. MCKEE,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

1:18-CV-01013 EAW

## **INTRODUCTION**

Represented by counsel, Plaintiff Heidi M. McKee ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 18; Dkt. 20), and Plaintiff's reply (Dkt. 24). For the reasons discussed below, Defendant's motion (Dkt. 20) is denied and Plaintiff's motion (Dkt. 18) is granted to the extent that the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

# BACKGROUND

Plaintiff protectively filed her application for DIB on October 23, 2013. (Dkt. 7 at 18).[1] In her application, Plaintiff alleged disability beginning October 20, 2013, due to bipolar disorder, schizophrenia, scoliosis, attention-deficit disorder, and a blood condition. (*Id.* at 18, 381-84). Plaintiff's application was initially denied on February 28, 2014, and was further denied upon reconsideration on June 10, 2014. (*Id.* at 18, 238-40, 244-48). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Bryce Baird in Buffalo, New York, on November 15, 2016. (*Id.* at 162-207, 249-54). On June 22, 2017, the ALJ issued an unfavorable decision. (*Id.* at 15-35). Plaintiff requested Appeals Council review; her request was denied on July 13, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-11). This action followed.

# LEGAL STANDARD

## I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2019. (Dkt. 7 at 20). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since October 20, 2013, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: deep vein thrombosis ("DVT"); bipolar disorder; attention-deficit hyperactivity disorder; borderline intellectual functioning; and antisocial personality features. (*Id.*). The ALJ further found that Plaintiff suffered from the nonsevere impairments of: menorrhagia status-post partial hysterectomy; history of pulmonary embolism; scoliosis; and migraines. (*Id.* at 21).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 22). The ALJ particularly considered the criteria of Listing 12.04 in reaching his conclusion. (*Id.* at 22-23).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform "a wide range of sedentary work," with the following specific limitations:

> [Plaintiff] can lift and/or carry and push and/or pull up to 10 pounds occasionally and up to 5 pounds frequently. Further, she can sit for up to 6 hours in an 8-hour workday and stand and/or walk for up to 2 hours in an 8-hour workday. She requires a sit/stand option, allowing her to stand, walk, or stretch for up to 1 minute after 30 minutes of sitting, and she would be off task for the 1 minute when standing, walking, or stretching. In addition,

> [Plaintiff] must be able to sit for up to 5 minutes after 30 minutes of standing or walking. She can occasionally climb ramps or stairs, but cannot climb ladders, ropes, or scaffolds, crawl, or operate foot controls bilaterally. The claimant can occasionally balance, stoop, kneel, and crouch. Further, she cannot be exposed to excessive heat, cold, moisture, humidity, or vibrations, nor hazards such as unprotected heights and moving machinery. Finally, the work must be limited to simple, routine tasks that can be learned after a short demonstration or within 30 days. She may have at most superficial interaction with the public. The work may vary occasionally, but not regularly, with respect with respect to duties, hours, or location.

(*Id.* at 23-24). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 27-28).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of printed circuit checker, rotor assembler, and surveillance systems monitor. (*Id.* at 28-30). Accordingly, the ALJ found Plaintiff not disabled as defined in the Act. (*Id.* at 29).

## II. Remand of this Matter for Further Proceedings Is Necessary

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the ALJ improperly relied on his own lay opinion is assessing Plaintiff's RFC. (Dkt. 18-1 at 15-21). For the reasons set forth below, the Court finds that the ALJ erred in failing to further develop the record by obtaining opinion evidence from an acceptable medical source and determined Plaintiff's physical RFC based on his own interpretation of the medical record. This error necessitates remand for further administrative proceedings.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*

*v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute [her] own judgment for competent medical opinion. This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

In this case, the sole medical opinion related to Plaintiff's physical impairments was the June 2014 opinion of state agency reviewing physician Dr. Edmund Molis. (Dkt. 7 at 229-31). Dr. Molis reviewed the medical evidence of record and concluded that Plaintiff was capable of a limited range of light work. (*Id.*). The ALJ gave Dr. Molis' opinion "little weight because the objective evidence supports a conclusion that [Plaintiff] is capable of at most the range of sedentary work outline above." (*Id.* at 26).

It was proper for the ALJ to give Dr. Molis' opinion little weight. Dr. Molis did not examine Plaintiff and his review of the medical evidence occurred in June 2014, prior to a worsening in Plaintiff's DVT. (*Compare* Dkt. 7 at 489 (venous Doppler study from January 2014 showing no evidence of acute deep or superficial thrombosis in the left lower

extremity or contralateral common femoral vein) *with id.* at 589 (venous doppler of left lower extremity in March 2015 "positive for DVT with thrombus seen in the common femoral vein, superficial femoral vein and popliteal veins as well as the calf veins") and 563 (bilateral venous doppler in February 2016 showing thrombus involving the left common femoral vein)). However, the rejection of Dr. Molis' opinion left the record devoid of any medical opinion regarding Plaintiff's physical functioning, creating a gap in the record that the ALJ had a duty to fill. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *Calero v. Colvin*, No. 16 Civ. 6582 (PAE), 2017 WL 4311034, at *9 (S.D.N.Y. Sept. 26, 2017); *Falcon v. Apfel*, 88 F. Supp. 2d 87, 91 (W.D.N.Y. 2000).

Defendant argues that the RFC finding is not defective because "[e]ven if there is no supportive functional assessment from a physician, the RFC can still be supported by substantial evidence, including treatment notes from a physician." (Dkt. 20-1 at 9). "While in some circumstances, an ALJ may make an RFC finding without . . . opinion evidence, the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.'" *Muhammad v. Colvin*, No. 6:16-cv-06369(MAT), 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017) (citation omitted). In other words, "the ALJ may not interpret raw medical data in functional terms." *Quinto*, 2017 WL 6017931, at *12 (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 911-13 (N.D. Ohio 2008)). That is precisely what the ALJ here did. In particular, with respect to Plaintiff's DVT, the ALJ concluded that the impairment was "adequately accommodated by a limitation to a reduced range of sedentary work with additional nonexertional limitations" based solely on his review of Plaintiff's Doppler

studies and physical examinations, as well as his assessment that Plaintiff had been "noncompliant" with her anticoagulant therapy. (Dkt. 7 at 25). The ALJ did not rely on treatment notes or even Plaintiff's own testimony, but instead impermissibly reviewed the bare medical findings and translated them into functional assessments. This was reversible error. *See Henderson v. Berryhill*, 312 F. Supp. 3d 364, 371 (W.D.N.Y. 2018) (holding the ALJ's RFC finding was improper "[i]n the absence of the medical opinions rejected by the ALJ" and where the ALJ relied upon "raw medical data" in the plaintiff's treatment notes).

Defendant's reliance on *Johnson v. Colvin*, 669 F. App'x 44 (2d Cir. 2016) and *Monroe v. Colvin*, 676 F. App'x 5 (2d Cir. 2017) (*see* Dkt. 20-1 at 9) is misplaced. These cases stand for the proposition that the record need not contain a formal medical source statement or opinion if it otherwise contains a useful assessment of a claimant's functional abilities from a medical source. *See Monroe*, 676 F. App'x at 8-9; *Johnson*, 669 F. App'x at 46-47. As another judge in this District recently explained, "[w]here the record does not contain a useful assessment of Plaintiff's physical limitations, *Monroe* [and *Johnson* are] of no help to the Commissioner." *Bartha v. Comm'r of Soc. Sec.*, No. 18-CV-0168-JWF, 2019 WL 4643584, at *3 (W.D.N.Y. Sept. 24, 2019) (quotation omitted). In this case, apart from Dr. Molis' rejected opinion, the record "is devoid of any assessment of plaintiff's exertional limitations and does not even contain any useful discussion of such limitations." *Id.* at *2. On these facts, the Court cannot find that the ALJ's RFC assessment

is supported by substantial evidence. As such, remand of this matter for further administrative proceedings is required.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 18) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 20) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: March 18, 2020
 Rochester, New York